IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


| | |
|---|---|
| WEST COAST BANCORP, an Oregon corporation, and WEST COAST BANK, an Oregon banking institution,<br><br>    Plaintiffs,<br><br>    v.<br><br>BANCINSURE, INC., an Oklahoma corporation,<br><br>    Defendant. | Civ. No. 04-1673-AA<br><br>OPINION AND ORDER |

Dennis P. Rawlinson
MILLER NASH LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, OR 97204
    Attorney for plaintiffs

Loren D. Podwill
Randy L. Arthur
BULLIVANT HOUSER BAILEY PC
300 Pioneer Tower
888 S.W. Fifth Avenue
Portland, OR 97204
    Attorneys for defendant

1 - OPINION AND ORDER

AIKEN, Judge:

Plaintiffs West Coast Bancorp and its wholly-owned subsidiary West Coast Bank brought suit for breach of an insurance policy endorsement issued by defendant Bancinsure. Defendant moves for summary judgment against plaintiffs, arguing that the endorsement does not provide coverage for plaintiffs' alleged loss. Plaintiffs in turn move for partial summary judgment that they are entitled to coverage under the relevant policies. Defendant's motion is granted.

## BACKGROUND

West Coast Bancorp and West Coast Bank (collectively, the Bank) purchased a Directors and Officers Liability Insurance Policy (Basic Policy) and a Lender Liability Insurance Endorsement (Endorsement) issued by defendant. At the time, West Coast Bank was known as the Bank of Newport. Both the Basic Policy and the Endorsement remained in effect until December 1, 1998. When the Basic Policy and Endorsement expired on December 1, 1998, the Bank did not renew either policy.

In May 1998, Edward A. Fischer and Marianne Fischer (the Fischers) agreed to loan B.A.S.S. Construction Company (BASS) $4.6 million for the purchase of real property in Lincoln County. As part of the and agreement, BASS apparently agreed that it would identify a third party to provide financing to repay the Fischers within six months.

On May 7, 1998, Vicki Rodriguez, an employee of the Bank of Newport who represented herself to be an Assistant Vice President and Commercial Loan Officer, provided a letter to the Fischers. It stated:

> I have received notification from [my client BASS] that you will be funding (for my client's benefit) a loan in an amount up to $4.6 million. This financing will be in place for six (6) months from the date of funding. At maturity, you will have to be paid off for all outstanding principal plus any accrued (unpaid) interest.
>
> Please accept this letter as the Bank of Newport's commitment to have financing in place for our client which will retire your loan (plus any accrued, unpaid, interest) on or before the maturity date of your Note Receivable to [BASS] (which will be no less than 180 days from your original date of funding). We understand that you will be relying upon this Commitment in making your loan to [BASS].

Declaration of Richard R. Rasmussen (Rasmussen Decl.), Ex. 2.

On May 12, 1998, Rodriguez sent a letter of commitment to the president of BASS, indicating that the Bank of Newport would provide financing to retire the loan from the Fishers within 180 days from the date of funding. Id. Ex. 3, p. 2. However, BASS apparently did not take further action to formalize the Bank's commitment or obtain financing from the Bank. The Fischers subsequently executed the loan agreement with BASS and disbursed $4.6 million, with the loan to be paid in full as of November 14, 1998.

On October 19, 1998, counsel for the Fischers wrote Rodriguez and demanded that the Bank of Newport execute the financing

3 - OPINION AND ORDER

commitment made to BASS and provide funding in full to meet BASS's repayment obligation to the Fischers by November 14, 1998.  Id. Ex. 4, pp. 1-2.

On November 17, 1998, counsel for the Fishers wrote Rodriguez again and advised her that the Fishers intended to pursue recovery of the funding for the loan to BASS that was now in default. Rasmussen Decl., Ex. 4, p. 3.

On November 23, 1998, the Risk Management Administrator for plaintiff West Coast Bancorp notified defendant of the following:

> On behalf of West Coast Bancorp and pursuant to the referenced Directors and Officers Liability Insurance Policy issued by BancInsure, Inc., this letter serves as notice of a claim or, in the alternative, of events which may give rise to a claim in the future, pursuant to Section VIII of the policy.
>
> On May 7, 1998, Vicki Rodriguez, an employee of the Bank of Newport, issued an alleged commitment letter for up to $4.6 million on behalf of B.A.S.S. Construction Company. On October 19, 1998, a demand for funding in full was sent to The Bank of Newport.  The commitment far exceeds the loan limit for this employee.  To the extent that this matter leads to a claim as defined in the policy against West Coast Bancorp or any other insureds covered under the policy, we hereby provide this notice.

Id. Ex. 5.

On May 6, 1999, the Fischers filed a civil action against the Bank in Multnomah County Circuit Court, Fischer v. West Coast Bank and West Coast Bancorp, No. 9905-14969.  Rasmussen Decl., Ex. 6. The Fischers alleged breach of contract, promissory estoppel, and conversion, and sought damages or specific performance.

On July 14, 1999, defendant informed the Bank that neither the

4 - OPINION AND ORDER

Basic Policy nor the Endorsement provided coverage for the Fishers' claims against the Bank, and that defendant would not participate in the defense of such claims. Id. Ex. 8, p. 1. Defendant explained that there was no coverage under the Endorsement because the Fishers were not "borrowers" as defined in the Endorsement, and that the alleged loan commitment was above the Bank's legal lending limit. Id. Ex. 8, p. 3.

In March 2000, the Bank settled the Fischers' claims for $5.4 million in exchange for an assignment of rights from the Fischers and title to the Lincoln County property. According to defendants, the property to which the Bank gained title was valued at $1.7 million.

Plaintiff subsequently filed suit against BASS, seeking foreclosure of the $4.6 mortgage on the Lincoln County property. On April 30, 2001, BASS filed counterclaims against the Bank for breach of contract, promissory estoppel, promissory fraud, breach of the covenant of good faith and fair dealing, and interference with economic relations. Rasmussen Decl., Ex. 7.

On December 19, 2001, the Bank settled the lawsuit with BASS. As part of the settlement, BASS's assignee exercised an option to purchase the Lincoln County property from the Bank for $1.55 million. Defendant maintains that the Bank recognized a gain with respect to the BASS settlement from the sale of the property.

On August 23, 2000, defendant notified the Bank that the Basic

Policy and the Endorsement did not provide coverage for BASS's counterclaims, because BASS asserted no claim against the Bank during the policy period. Rasmussen Decl., Ex. 9.

On October 12, 2004, after plaintiff requested that defendant reconsider coverage for the claims under the Endorsement, defendant once again notified the Bank that there was no coverage for either the Fishers's or BASS's claims under the Endorsement. Defendant explained that the Fischers were not borrowers, and that neither the Fischers nor BASS asserted claims against the Bank before the Endorsement expired. Id. Ex. 10, pp. 1, 3-5, 6.

On November 15, 2004, the Bank filed this action for breach of insurance policy under the Endorsement. Pursuant to the terms of the Endorsement, the Bank seeks to recover the amount paid to the Fishers in settlement, or the difference between the amount paid in settlement to the Fischers and the amount received in connection with the BASS settlement. First Amended Complaint, ¶ 21. The Bank also seeks costs that it incurred in defending the Fischers' claims and BASS's counterclaims. Id. ¶ 24.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56©). The

materiality of a fact is determined by the substantive law on the issue. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The authenticity of a dispute is determined by whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

Special rules of construction apply to evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Elec., 809 F.2d at 630.

## DISCUSSION

The Bank and defendant both move for summary judgment on the issue of liability under the Endorsement. Defendant argues that it is entitled to summary judgment, because no coverage exists under the terms of the Endorsement for claims brought against the Bank by either the Fischers or BASS. Specifically, defendant argues that

7 - OPINION AND ORDER

the Fischers were not "borrowers" as defined in the Endorsement, and further, neither the Fischers nor BASS made a claim against the Bank during the effective period of the Endorsement.

The Endorsement issued by defendant set forth the defined scope of insurance coverage as follows:

> In consideration of the additional premium paid and in reliance upon all statements made in the application for the Basic Policy . . . it is agreed that the Basic Policy is amended (subject to the terms and conditions set forth in this endorsement) to pay on behalf of the Insured, Loss . . . which the Insured shall become legally obligated to pay, provided, Claim or Claims for such Loss is made against the Insured and is reported to the Insurer while this endorsement is in force, and that such Claim or Claims have arisen out of any Wrongful Lending Act relating to an extension of credit or refused extension of credit to a Borrower.

Rasmussen Decl., Ex. 1, p. 8. Thus, the Endorsement provided coverage for claims made against the Bank that relate to credit refused or extended to a "borrower" and are reported to defendant while the Endorsement is in effect. The parties essentially dispute the meaning of this language.

"In general, the construction of an insurance policy, as a species of contract, is a question of law." Farmers Ins. Exch. v. Crutchfield, 200 Or. App. 146, 153, 113 P.3d 972 (2005). In construing insurance policies, the court must determine what the parties intended based on the terms and conditions expressed in the actual wording of the policy. Hoffman Construction Co. v. Fred S. James & Co., 313 Or. 464, 469, 836 P.2d 703 (1992). "If the term at issue is not defined in the policy, the next step is to look to

8 - OPINION AND ORDER

the plain meaning of the term." North Clackamas Sch. Dist. No. 12 v. Oregon Sch. Boards Ass'n Prop. & Cas. Trust, 164 Or. App. 339, 344, 991 P.2d 1089 (1999). "Only if the wording is ambiguous" may the court "resort to rules of construction, such as the familiar canon that policies are construed against the insurer." Ristine v. Hartford Ins. Co., 195 Or. App. 226, 231, 97 P.3d 1026 (2004) (citing Hoffman, 313 Or. at 470, 836 P.2d 703).

> For a term to be ambiguous . . . there needs to be more than a showing of two plausible interpretations . . . . In other words, a term is ambiguous in a sense that justifies application of the rule of construction against the insurer *only* if two or more plausible interpretations of that term withstand scrutiny, *i.e.,* continues to be reasonable, after the interpretations are examined in the light of, among other things, the particular context in which the term is used in the policy and the broader context of the policy as a whole.

Hoffman, 313 Or. at 470, 836 P.2d 703 (emphasis in original). Whether contract language is ambiguous is, itself, a question of law. Arlington Ed. Ass'n v. Arlington Sch. Dist., 196 Or. App. 586, 595, 103 P.3d 1138 (2004). With these principles in mind, the court turns to defendant's arguments.

A. Definition of Borrower

Defendant argues that the Fischers are not "borrowers" within the definition of the Endorsement, and therefore, the Bank is not entitled to coverage for the Fischers' claim.

It is undisputed that the Endorsement explicitly excludes coverage for losses suffered "in connection with any Claim made against the Insured for or arising out of . . . [a]ny claim brought

9 - OPINION AND ORDER

by any person or entity other than the Borrower." Rasmussen Decl., Ex. 1, pp. 9-10. In other words, there is no coverage for losses resulting from a claim against the Bank, unless the claim is made by a "Borrower." The Endorsement defines "Borrower" as "any person or entity which is not directly or indirectly affiliated with the Insured in any respect and to which an extension of credit, or a refusal to extend credit was made or negotiated." Id. Ex. 1, p. 9. I find that the term and definition are clear and unambiguous and limit "Borrower" to a person or entity who directly negotiated with the Bank regarding credit terms and to whom an extension or refusal of credit was made.

Based on the evidence presented by plaintiff, the Bank did not extend or refuse credit to the Fischers. Rather, it negotiated an extension of credit to BASS to repay the loan from the Fishers, and the Bank represented to the Fishers that it would provide financing to BASS.

The Bank asserts two arguments to support their claim that the Fischers qualify as "Borrowers." First, the Bank maintains that "[the Bank] negotiated with the Fischers regarding an alleged extension of credit." Plaintiffs' Memorandum in Support of Motion for Partial Summary Judgment, p. 10. Plaintiff is incorrect. Nothing in the record supports an inference that the Bank "negotiated with" the Fischers. Rather, upon request, the Bank represented to the Fischers that it intended to provide financing

to BASS. Although the Bank purported to recognize that the Fischers were relying on the Bank's commitment in agreeing to loan BASS $4.6 million, the Bank at no time extended or negotiated and extension of credit *to* the Fischers. Granted, the Fischers may have been a third-party beneficiary of the alleged loan agreement between BASS and the Bank; however, such status does not render the Fischers "Borrowers" as defined in the Endorsement.

The Bank next argues that the court may find coverage for the Fischers's claims under the Endorsement by treating their claims and those of BASS as part of a single claim arising from the Bank's alleged breach of the loan commitment. I do not find this argument persuasive. First, at no time did BASS demand performance of the alleged loan commitment as did the Fischers. Further, the Fischers filed suit against the Bank in 1999, while BASS did not assert claims against the Bank until 2001, and then in the form of counterclaims in response to the Bank's suit against it. Therefore, the claims asserted against the Bank by the Fishers and BASS do not constitute a single claims for purposes of coverage under the Endorsement.

B. Timeliness of Claims

Defendant next argues that even if the court determines that the Fischers are "Borrowers" under the Endorsement, summary judgment remains appropriate because neither the Fischers nor BASS filed a claim against the Bank while the Endorsement was in effect.

The Bank argues that defendant is estopped from asserting the timeliness of the claims made by the Fischers and BASS, because it did not rely on this ground in denying coverage for the Fischers's claims. However, defendant raised the timeliness of notice upon the Bank's request for reconsideration, and it is undisputed that defendant raised this issue when it initially denied coverage for the claims made by BASS. Therefore, I find that defendant may raise the issue of timeliness of the claims made against the Bank.

As stated above, the Endorsement provides coverage for losses incurred by the Bank, "provided, Claim or Claims for such Loss is made against the Insured *and* is reported to the Insurer while this endorsement is in force . . . ." Rasmussen Decl., Ex. 1, p. 8 (emphasis added). The term "Claim" is defined as:

> [A]ny judicial or administrative proceeding that is filed against an [Insured] in any state or federal court or administrative agency, in which such [Insured] could be subjected to a binding adjudication of liability for damages or other civil relief. A Claim shall be deemed to have been made on the date that the judicial or administrative proceeding is filed in court or with the administrative agency.

Rasmussen Decl., Ex. 1, p. 2. Accordingly, defendant argues that the plain meaning and intent of the Endorsement provides coverage only for losses arising from judicial or administrative proceedings filed against the Bank while the Endorsement remained in effect, i.e., on or before December 1, 1998.

It is undisputed that the Fischers did not file a legal proceeding against the Bank until May 1999, and that BASS did not

12 - OPINION AND ORDER

assert counterclaims against the Bank until April 2001.  Thus, no "claims" against the Bank were made until after the Endorsement expired on December 1, 1998.  I do not find the clear language of the Endorsement vague or ambiguous with respect to the coverage provided or notice of claims; rather, the Endorsement explicitly covers only claims made against the Bank and reported to defendant during the effective period of the Endorsement.

Nevertheless, the Bank argues that Section V of the Endorsement – stating that "the clauses, terms and conditions forming the Basic Policy and any applicable endorsement shall be deemed a part of this endorsement" except where specifically excluded – effectively incorporates Section VIII of the Basic Policy and provides coverage for anticipated claims.  Rasmussen Decl., Ex. 1, p. 10.  Section VIII governs notice of anticipated claims against an insured and allows "any Claim, the potential or which was specifically identified as required above, shall, for the purpose of this Policy, [to] be treated as a Claim made during the Policy Period."  Rasmussen Decl., Ex. 1, p. 5.[1]  In other words,

---

[1]Section VIII of the Basic Policy provides:

If, during the Policy Period, any Insured Person or the Company (1) receives written or oral notice from any party that it is the intention of such party to hold any Insured Person responsible for a specific alleged Wrongful Act, or (2) becomes aware of any circumstances that may give rise to a Claim against any Insured Person for a specific alleged Wrongful Act; and, as soon as practicable gives written notice of the potential Claim to the insurer as referenced in subsection (1) and (2)

if an insured complies with the requirements set forth in Section VIII of the Basic Policy, coverage may be provided for anticipated claims.

However, the Endorsement does not allow notice of or provide coverage for anticipated claims; rather, claims must be made against the insured during the policy period. Further, under the Endorsement, the parties "agreed that the Basic Policy is amended (subject to the terms and conditions set forth in this endorsement). . . ." Rasmussen Decl., Ex. 1, p. 8. Therefore, to the extent the Endorsement amends notice of claims requirements, Section VIII is not applicable.

Regardless, I find that the Bank cannot rely upon Section VIII of the Basic Policy to provide a notice of anticipated claim under the Endorsement. The Endorsement explicitly states: "It is

---

> above, which notice is, in any event, received by the insurer no later than thirty (30) days following the end of the Policy Period, and such notice includes (1) the reasons for anticipating such a Claim, (2) the nature and date of the alleged Wrongful Acts, (3) the alleged injury, (4) the names of the potential claimants and any Insured Person involved in the alleged Wrongful Acts, and (5) the manner in which any Insured Person or the Company first became aware of the potential Claim: then any Claim, the potential or which was specifically identified as required above, shall, for the purpose of this Policy, be treated as a Claim made during the Policy Period.

Even if applicable, it is questionable whether the Bank complied with the terms of Section VIII. In its notice of anticipated claim, the Bank did not identify the Fischers as potential claimants or indicate the nature of the Fischers's injury. Rasmussen Decl., Ex. 5.

understood and agreed that the giving of Notice of Claim under the coverage provided by this endorsement does not constitute proper notice of a Claim under the Basic Policy nor does the giving of notice pursuant to the Basic Policy constitute proper notice under this endorsement . . . ."  Rasmussen Decl, Ex. 1, p. 11. Therefore, the Bank is precluded from relying on the notice of claims provision of the Basic Policy when providing notice under the Endorsement, and a notice of claim under the Basic Policy does not suffice as notice under the Endorsement.

Here, in the Bank's November 23, 1998 notice of claim, it did not give notice of an anticipated claim under the provisions of the Endorsement.  Rather, the Bank relied explicitly and exclusively on the Basic Policy.  See Rasmussen Decl., Ex. 5 ("On behalf of West Coast Bancorp and *pursuant to the referenced Directors and Officers Liability Insurance Policy* issued by BancInsure, Inc., this letter serves as notice of a claim or, in the alternative, of events which may give rise to a claim in the future, pursuant to Section VIII of the policy.") (emphasis added).  Thus, even if the court found Section VIII of the Basic Policy applicable to claims under the Endorsement, the Bank did not give notice of claim pursuant to the Endorsement.  Accordingly, I find that the Endorsement does not provide coverage for claims made against the Bank by the Fischers or BASS, because the claims were not made against the Bank during the effective period of the Endorsement.

**CONCLUSION**

For the reasons explained above, the Fischers were not "Borrowers" as defined in the Endorsement, and no claim against the Bank was made while the Endorsement was in effect. Accordingly, defendant's Motion for Summary Judgment (doc. 21) is GRANTED, and plaintiffs' Motion for Partial Summary Judgment (doc. 11) is DENIED. This action is DISMISSED.

IT IS SO ORDERED.

Dated this  25  day of July, 2005.


          /s/ Ann Aiken          
            Ann Aiken
    United States District Judge